We're going to turn to our next case of the morning. I want to make sure I pronounce the last name correctly so Mr. Vorobiev, you can correct me, but it's United States v. Kirilyuk. Good morning, Your Honor. It is correct, Gene Vorobiev on behalf of Mr. Kirilyuk, and I would like to reserve two minutes for rebuttal, please. The court has identified three issues that we should focus on, and unless the court has a different preference, my plan was to start with the first issue identified in the order and focus on that, but I can begin anywhere where the court prefers. Do you mind starting with the $500 per card argument? Of course not, Your Honor. The $500 per card rule is invalid because in this case the commentary is not a reasonable interpretation of the guideline use of the term loss. It's at odds with the common meaning of that word. So this is your argument in your reply brief based on the recent Sixth Circuit decision in Riccardi? Well, I think the Kaiser theory of that argument is in the reply brief, that's correct, and it is based on Riccardi. I think we did sort of raise the Stinson issue in the definition of loss that the commentary uses is inconsistent with the guidelines use of the term loss. We didn't really focus on the conflict between the commentary and the text itself. We focused more on the fact that as a court and as a circuit interpreted the term loss, that's in conflict with the commentary. So I will agree with that characterization. So I think we did sort of raise the Stinson issue but not the Kaiser issue. I don't know if that distinction makes sense to the court. So would the Kaiser issue be waived? Well, I won't say that it should be deemed waived because it's a new case and I do agree that the government didn't get a chance to brief it, but we did raise it in the reply brief promptly after the case came out. And if the court is not a full standing issue in its own right, it should give us at least an opportunity, both sides an opportunity to brief it. But you think the Stinson argument was properly presented in the opening brief? So if we were convinced by the concurrence in Riccardi, do you think that that is not waived? Right. So go ahead. Right, and I also, I would also add that I think whether you apply Stinson or Kaiser, you're dealing with the same essential problem and you get to the same result really because what's at bottom here is that the commentary is not a reasonable interpretation of the guideline itself. So that means under Stinson, it won't get deference and it Why do you think this issue is still open in the circuit? I mean, we have the yellow decision, we have the decision, albeit unpublished, but it was Mr. Kurelek's co-defendant, Melkonian, who had the same $500 multiplier applied to him. So what's your argument as to how this panel could achieve the result you're seeking? Right. The response to the first question is that the yellow didn't address this the commentary applies to credit cards, physical credit cards, not just numbers. So that's not the issue before the court. It's different. Here, the issue is a conflict between the commentary and the guideline. So I don't think there was a published case from the circuit that addresses that issue. Plus, should the court disagree with me on this? I think Kaiser constitutes intervening a story in light of Miller versus GAMI. And that that would be the alternative way for the court to get his argument. Now, I emphasize that I think yellow doesn't address the issue. But if the court disagrees with me, then I think Kaiser was issued 2019 Supreme Court decision constitutes intervening a story which I think irreconcilably undercuts any analysis you can deduce from yellow on this issue. Council, if I agreed with you that yellow didn't have wasn't precisely this issue, but it does say in its analysis, the quote, this loss is a presumed loss setting a floor beneath which neither actual nor intended loss may fall. So it does suggest that the word loss can mean presumed loss. And if we have if we're bound by that rationale, how can we say that the $500 rule is inconsistent or unreasonable application of the word loss? Well, you're right. I guess my response would be that I just don't see how you can read yellow as addressing whether the use of the term loss in the guideline is in conflict with the commentary. I think it's just basically what you are just described states what the commentary says. It's a presumed, you know, the commentary describes a presumed loss. It doesn't really address the conflict at all. Yeah. Okay. So just going to the merits of that is a presumed loss inconsistent with the word loss. Was it ordinary? I would say any ordinary definition of that term. I mean, the recording case does discuss that extensively. But beyond that, I mean, when you think of loss, I mean, you'd usually it would usually be something based on the fact that the defendant has actually taken, for example, the credit case that the defendant charged to the card of the victim. Or, you know, if the actual taken didn't succeed, I suppose whatever amount the defendant tried to take and didn't succeed. But I cannot think of a situation where the term loss would be deemed a presumed amount regardless of what the actual facts are. So, so I don't I don't think there's any way to deem what the guideline has done. I'm sorry. The commentary has done to be a reasonable interpretation. Do you think do you think loss cannot mean either a foreseeable loss or an intended loss? It has to mean an actual loss. Well, no, I think a loss can be an intended loss. In fact, this this court has said that many times interpreting the to be one point one that loss is actual, the greater of actual or the intended loss. In fact, I think that's also in the in the commentary to the guideline. What about what about a reasonably foreseeable loss? Well, I think I think we're still that's still tied to the fact of the case, because reasonable foreseeability looks at facts of the case, it's not an amount taken in the vacuum. I think that where this is completely different is it just says regardless of what the facts are, it's $500. And I think this is in stark contrast to the facts here, because this scheme operated precisely based on the fact they're going to charge very small amounts to avoid detection. And if there's any problem, they're going to reverse the charge. So they're not detected. So it sounds like it sounds like you're equating actual loss to intended loss. Because you're talking about what actually was done. How would you calculate the intended loss in a case like this, if you don't think $500 is the appropriate number? Well, you're right, I think actually, the intended loss here was calculated. The PSR calculated the actual loss at about a million and a half, and the intended loss at about three million and a half. So, you know, we have those two numbers in this case. No, I understand that. But I'm asking you, you're saying actual and intended loss are different, different losses. And that you don't have a problem with how it's calculated here. I'm asking you is how would you calculate it for a case like this? Well, you're right. Can I quibble with something just just to make sure that my argument is understood? Okay. I'm challenging the presumed loss. And I, my point is that presumed loss and intended loss are two different things. Because intended loss is still based on the facts of the case, whereas a presumed loss, you take a set amount that apparently the commission here picked, and apply it regardless of what the defendant's intent was. So what you're saying, what you're saying then is intended loss and actual loss are equal, if you take them from the facts of the case. Well, then I'm asking, how would you calculate the intended loss in a case like this? Well, in this, you know, the intended loss in a case like this, you would look at what the defendant's intent was in running the scheme. So if you take evidence that the defendants had looked to make charges as small as possible. So you're back to actual loss then? Well, no, I would I would disagree with you. I'm not saying I'm not saying that they're the same in this case. In fact, probation is not saying that it's the same number. I mean, they've picked two very different numbers. One significantly greater than the other. So I don't think probation uses the intended loss based on the $500 multiplier. No, no, you're right. I guess I disagree because that probation's number could have possibly been based on the $500 per card, because that results in $60 million, $3 million, it's a much, it's a much different number. So no, I would respectfully disagree with that. Can I, you're, there are a lot of questions here. And I want to ask you before your time is up about the authentication features enhancement. This is not an issue you raised in the briefs. And but it's important, obviously, to get it right. And one, let me ask the question, because here's what it is. I don't understand what the issuing who the issuing authority here was the the briefs seem to operate on the presumption that the the authentication feature, the sequence of numbers was issued by perhaps a bank or American Express, but an issuing authority has to be a government entity in most circumstances. So I'll ask the government to address that when they come up. This wasn't briefed, but I want to make I don't, I'm not sure that this was correctly imposed in light of that. And I want to know what your answer is. Well, I understand the definition to be that the issuing authority either has to be a government entity. And I'm not sure whether it could be a bank. And again, I apologize if my answer isn't crisp, because this is Okay, if you're not prepared to address that, that's fine. I just it was a question. I want to try to be helpful. I want to try to see if I can answer this. I think that that's the definition in in the guideline does focus on the fact that the authentic and authenticating feature has to be on a document and it has to be used by an issuing authority. So I suppose those two facts would suggest that it, you know, that the issuing authority would have to be a government authority. And I agree that it's not an issue that we focused on in I think the this enhancement is problematic for other reasons. But I, I do agree that for those two reasons, it may be problematic as well. And I don't know, did I answer your question? I think you did. Let me ask you here. What other than that issue? What arguments do you have that this authentication feature was, was incorrectly imposed? Well, I think that the definition requires the authenticating feature to be used by the issuing authority to distinguish between a counterfeit card and a falsified card. And again, I'm using the term card on the assumption that the word document refers to the card, which I'm not sure that it does given what we've discussed a few moments. Does there need does there need to be some physical document? You know, the docs, well, the definition clearly says that it does. It says gives a document is counterfeit, altered or otherwise falsified. And a factual point. In this case, there was no evidence that a physical card was actually used. Right? That's, that's the question I had. What's the document here? What was the government's theory what the document was? I don't I don't think that I don't think they've identified what the it was in district where I don't think they've identified what that theory is. I Mr. Morris's theory in on appeal was that the credit card numbers were used in opening fake businesses. If I understand his argument correctly, Mr. Morris can correctly if I'm wrong. And I don't think that's accurate. If I'm reading his argument, right, I don't think that's accurate because the only way the card numbers, the card numbers were used once a business, the fake businesses and the students names were set up, then you take the stolen numbers, and you charge this, you know, this phone credit card numbers to those businesses, and you siphon the funds into the merchant accounts. But I don't think there's any evidence that a physical card was ever used. Right, but the the mean the statute that's referenced 128 D one references a document document making implement or means of identification. Then it goes on to say to determine if the document is counterfeit, altered or otherwise falsified. And a means of identification is elsewhere defined, and it includes things that are not physical documents like biometric data or names or other things. And so isn't the word the document really meaning document in the right? I'm actually I'm not sure that I agree with that. You know, I think when the guideline plainly says document and it hasn't, you know, I don't think there's any evidence of the commission attending and sales. I think we have to go with the definition. And I think, you know, the if the commission wanted to use the word record, I think that we would have used it. I mean, it's a straightforward enough word. We've taken you almost to the end of your time, and we'll give you time for rebuttal. But let me just ask my colleagues if they want to ask any more questions before we hear from the government. I could wait to rebuttal. Okay, we'll put two minutes on for rebuttal when you come back. And thank you. Thank you, Mr Morris. You may proceed. Thank you. Good morning, Your Honor. May it please the court met Morris on behalf of the United States. I'll turn first to this 500 per card question. I think that took up most of the court's concern in the opening argument. The law is is well established, but it's clear in the guidelines, and it's clear the law of this circuit that the guidelines mean what they say. The guidelines say what they mean. An application of three F sets a floor, a presumptive loss below which the court can't go. That's been the law in this circuit for decades from yellow and on. It's been relied upon by by this court in codefendant McKellen. Melkonian's case in the cruise case is routinely relied upon by the district courts in this circuit as establishing how to calculate this is a false ideas. You agree, though. Yellow didn't address this precise question of whether or not the presumed loss is consistent with the word loss. I think that's right. It didn't address it in the sense of this. This Ricardi argument is a new a new method of attacking the validity of the $500 per per card, um, in the guidelines. But that's exactly what this court is. This is the type of case that this court's Miller began me. Um, jurisdiction or his prudence says that we shouldn't allow this kind of attack here. So to clarify what this court says is that once once this court has established a rule and that rule here is that the presumptive loss and application of three F sets this floor and that it's it's a valid presumption. Well, you know, only said that it applied to credit cards or credit card numbers. I forget what you want, but it didn't say that it was consistent with the word loss or so. It seems like you're extrapolating from that. I think the point I think I'm trying to make is that what this court has said in Miller began me is that when when when the rule is established that it isn't that we come up with a new theory every year and come back and try to get a three judge panel toe to go out on a different road and create a new a new a new rule. If we're going to overturn a well established rule that we do it through process unless there's intervening higher authority that's clearly irreconcilable with the prior rule. But if there's a new argument attacking a statute or constitutionality of something we have to go on bonk before we get to reach a new argument, if the effect would be to overturn existing precedent, yes. And so that and that was really the issue in Miller began me. So Miller Academy itself was an en banc decision where this court had to flesh out the question of what's what's the right thing for a three judge panel to do and which things are reserved only to an en banc hearing by the court. So so yes that's what this court's precedent says is that simply coming up with a new theory about why something why we should strike down well established law that that's not something that a three judge panel ought to do and less compelled to do so by intervening higher authority that's clearly irreconcilable. Riccardi is neither higher authority because the Sixth Circuit is not a higher authority than this court nor is Riccardi clearly irreconcilable. I do think that there's some question as to whether I guess the the argument now raised only in the reply brief is that Kaiser is somehow clearly irreconcilable with Yellow and with all the cases that have relied on Yellow. And I think that really asks too much of Kaiser. I think it's important to recognize in this context that the Sixth Circuit in Riccardi at page 484 says nobody in our circuit has challenged the applicability of the 500 per card lost before. So they weren't in the in the place where this court is which is that there that somebody has previously challenged it and it's been held to be applicable. So they were really writing on a clean slate which this court isn't. And the other even if the court were to get to this question of whether Kaiser mandates this decision it really doesn't. So you know Kaiser talks about an agency to use the Sixth Circuit's description willy-nilly changing a definition and that's not what happened with this particular application note. As we pointed out and as the King case from the Seventh Circuit that we cite in the briefs talks about this change was both mandated by Congress and then subject to notice and comment rulemaking and then sent back to Congress for their thumbs up or thumbs down. So that's very different than the type of situation that caused the Supreme Court concern in Kaiser where a an agency simply said today we've decided without notice and comment rulemaking we've decided to By them putting it in the commentary tomorrow they could change the rule. Right the Commission could change the rule and it wouldn't be subject to any congressional oversight. That is something which the Sixth Circuit sort of forecast as being a problem but if the court is speculating that there might be a problem someday in the future then the right case to worry about that would be the case in the future where that happened. So what happened with this case was. Well you see your suggestion because the commentary was presented to Congress here we we should that becomes it becomes a law or the authoritative definition because it that seems to suggest that we then it Stinson no longer applies. I don't think it calls into question Stinson. You know Stinson actually was talking about the fact that really a question of applying plain error review on and and whether or not we can do our deference with plain error review. But I mean of the facts here what happened in this case was that Congress in the Identity Theft and Assurance Act authentically the ITADA directed the Commission review and amend both the guidelines and your policy statements to reflect the changes of how these crimes have happened. They specifically asked the Commission assess whether harm to victims reputation should be considered. Whether inconvenience to the victims should be part of something that drives this guideline and specifically said whether the question the adequacy of the value of a loss to an individual as being the way to drive these guidelines. So this so the Commission did research and analyze data and then they subjected this to notice and comment rulemaking which makes it different from from from Kaiser and then sent it back to Congress and say you've ordered us to do this we've done it here's what we think are we off are we off base and Congress didn't reel them back in so it's a really different situation than was dealt with by Kaiser and the court ought to give some does that make sense though because since it was put in the commentary Congress might not have focused on it right it didn't become binding that you know the finding definition of a loss is for the problem right it's that the process was fine as long if they put it into the actual guideline then it would be untouchable but since they put in the commentary it just seems that it is subject to review well of course it's subject to review your honor but I think what's important I think two things that are that jump out at me first is there was already a presumptive loss of $100 per card prior to this amendment so this existed and that was the presumptive loss that Congress directed the Commission to ask is that the right number the other the other reason I think I wouldn't agree with the courts premise of the court's question is that the act specifically asked the Commission to review the policy statements and make changes if needed so I don't think it's fair to say that if Congress directed the Commission look at the policy statement already contains a presumptive loss that that means that Congress then when they get back the result of what they asked for somehow didn't pay attention to the very thing that they ordered the Commission to evaluate which was the policy statements okay unless you want with just one quick follow-up please where did the $500 come from then according to the the sentencing Commission's amendment they said it was research and data and so they went back and looked at this question of what are these harms that aren't currently captured and they said the ones that Congress specifically told them to think about was harm to reputation inconvenience and the adequacy of the value of loss to an individual so they didn't spell out exactly what with that research and data and they didn't give all of the background but they then subjected this to the notice and commentary and even after notice and comment and they implemented it after sending it to Congress they didn't spell out for example we have found that the average you know these sort of ancillary losses are on average not a hundred and fifty dollars but our four hundred and fifty dollars they didn't go to that level of detail on the we'll get to the authentication issue in a second but first I did want to cover the the so-called illegal sentence and obviously we appreciate the government raising that issue but in light of that that doesn't this at least doesn't the sentence need to be vacated for just for that reason alone to let the district court decide what to do here no your effort for two reasons because this is up on plain error review we're really looking at this Buckland and Kent's or the governing cases and those cases say that this doesn't satisfy the third prong let alone the fourth prong of plain error review and the reason that those cases go there is because the courts question of shouldn't the court decide what to do the guidelines tell the court exactly what it has to do which is you have to run the highest stat max to its max and then you have to stack the next crime on to it until you get to the point where you've got the sentence you want so if this had been raised in front of the district court if we had caught it or if the defense had caught it or if the court had caught it itself or probation if anybody had noticed what was going on then the what the guidelines section 5g 1.2 sub d says is that the court has to still impose the same 27 year sentence it just has to find a way to manipulate the numbers on these these case these counts to run them concurrent to the point that you still come to 27 years so the end result would be the Bureau of Prisons calculation for the day that mr. Kerouac leaves prison would be no changed because the sentence would have to be the same and the guidelines mandate that and that's really think what drove this court's decisions in Buckland and Kent's to say that this is not the kind of error we agree that it is an error and it's it was an obvious error it should have been caught but Buckland and Kent say it doesn't affect pre-booker cases right so I mean the district court here you know it imposed the sentence of 264 months it then stacked the other the others on top of that I mean what basis is there to say that the district court knew that in fact the statutory maximum was 240 on the fraud it wouldn't have just done 240 as a starting point and then stacked and he would have a sentence that's two years less than what he has now because that would have been error by the it's very clear how sentencing court is supposed to do this you start with the guidelines calculate the guidelines and then you close that book and then you say I'm gonna look now at the 3553 factors and the 3553 factors tell me that this is the right sentence and what this court said was 27 years so it actually would have been error if the court had then said oh wait a second now I'm going back and I'm realizing that one of these has a 20-year stat max I'm now changing my 3553 analysis for some reason that would be wrong so it is it is mandated under CARDI and mandated by the guidelines that this is that has to be structured in this way it's certainly the case post Booker that he's allowed to set whatever sentence he thinks is right consistent with 3553 but that's what he did when he picked a 27-year sentence and once he picked that he had to structure the consecutive chicken and the egg problem right I mean where did he pick that from did he did he begin with the with the understanding that the the statutory maximum was 264 and build off of that to get to 27 I mean you say that he started with 27 and he needed to then essentially create a sentence that worked there but but I'm not sure we know that I think we do know that because that's what the law says he had to do right so it CARDI says you calculate the guidelines and then with them as a starting point you you do the 3553 to find the sentence you think is appropriate so he had to okay let me ask let's let's talk about the authentication issue and can you can you address this issue of the issuing authority who is the issuing authority here I don't know your honor I think the we'd have to say that because the theory was that these were the identities or the signatures of the people whose identities were taken over but we weren't talking about cloning of a card then the issuing authority to the extent that's applicable would have to be that person but I mean the issuing authority is the one that issues the identification document or the means of identification and so if it's if it were a you know a social security number or something like that then the government has issued that but the government didn't issue Amex numbers and so I just I'm not sure this was correct and I know it was wasn't raised by anybody and no one's briefed it but it doesn't seem that it's right I appreciate the court's perspective I do think that there is something that that view would have to be intention at least if not contradicting Sardariani because that is kind of the argument raised in Sardariani and that was the notary seal case yeah but the notary seal is a little different don't you think is it it is a little bit different I agree but one of the arguments made there was that way this notary seal wasn't put on some piece of plastic issued by the government and therefore you shouldn't call this an authentication feature in this court said that it was and so there's a slightly it's hard to to reconcile if the rule is it has to be some government piece of plastic and then something else that's that's associated with this government piece of plastic it's hard to reconcile how Sardariani it correctly applied it for the notary seal what about the issue of the document does there need to be a document like a physical document yeah I don't think that's the case because it does as the court pointed out that it says means of identification earlier in that same section so it's talking about and the section is also phrased relatively expansively so it talks about you know it goes through a list of things like holograms and so forth but then it says any sequence of numbers or letter or other feature which alone or in combination with another feature gives this assurance that what I'm looking at is legitimate and so I think it goes on to say to determine if the document is counterfeit altered or otherwise falsified it does your honor it does and that might be a good clue for me to focus in on our harmlessness argument for this one so just just so I know understand does the government have a theory what a doc the document is or are you just to be the account records if we're saying that you have slipped yourself in and assumed the identity of these j1 visa holders for example who created these accounts you would have to be the account creation documents by that theory it's like if I walk into a bank and say my name is Joe Smith I'd like all the money in the Joe Smith account they're gonna say can I see some ID so I've the means of identification is I'm Joe Smith and and I'm the person who's whose account this is and the authentication feature is look at this ID card that I'm giving you that says I'm Joe Smith right so that the document of the account whether that's a physical thing or something that's essentially computerized or intangible I think yeah if if document if it's if it's required that there be a document then that would have to be what it is it's these documents that constitute the account the identity that they've taken over yeah I've got some time here I know I'm really short but the short line is that you know Munoz Camarena says and I think it's pretty clear that we and the court has said in Munoz Camarena which is if there's some question about a two-level adjustment calculate the guidelines both ways and then say it would you still give the same sentence in this court at the request of the government said that and and that's why under Munoz Camarena and leisure the prior case that's why it's harmless as to either of the two-level enhancements I see that I'm definitely I want to make sure that my colleagues don't have anything else to ask you okay well let's put three minutes on from mr. Barabas who we've been going a little longer this morning but important issues so please go ahead there you are it took me a second to unmute so I actually wanted to pick up was a heartlessness error argument for it because this is where mr. Morris left off my read of Munoz Camarena is actually quite different from him I think it stands for the proposition that in most cases when the judge merely says well I would have imposed the same sentence regardless that's not enough to Munoz Camarena the judge did one better and basically said even if the 9th Circuit reverses me I'm going to still impose the same sentence which we don't have here and what I think we have in this case at least it's possible that the judge impose a sentence as a product of 264 on the fraud 24 on the ID theft and 36 on failure to appear so it's not 27 reason backwards it's actually a package it ends up with 324 and you can look at probation's recommended sentence as an example of that because they have 300 based on 240 plus 36 plus 24 so I think there is at least a reasonable chance that the sentence here is actually a product of a sentencing package a component which is illegal and I know it's unplanned error but all we need in order to satisfy that requirement is to show reasonable possibility that their error might have affected 324 and I think that's in here and I will also add that there is at least at minimum a failure to explain how you get why there is an imposition of 36 months and they escape even though there is that crime is accounted in the guidelines by a five increase there was a defensive argument there should be something lower because of that there's no explanation as to why the court still went with that number so I think you can take that as an additional factor as to why this really should go back now if unless the court has an objection want to quickly jump on back to five hundred dollar per card rule argument I disagree with mr. Morris that yellow set a law on this issue I would direct this court's attention to a case from the circuit which was a court faced a similar problem there's an argument there is a conflict between the commentary and the guideline and the court said we'll be riding on a blank slate we would agree but because there is a specific prior case addressing that conflict and the court said that there is no conflict seven then we're bound and we have to go to Miller versus we don't have that here did you say for that what United States versus crumb I would be happy to 28 J this is a court as soon as we're done to give you the precise side but I think it gives you an example the court went and basically said you have to go back and education because there is a prior case specifically addressing that issue we don't have that here I think we have your argument mr. Rubio but I want to make sure that my colleagues don't have any additional questions for you just one last question could you make the argument to the district court that the five hundred dollar per card rule is discretionary and he doesn't have to impose it in this case well given the present present authority I probably you so I think the only way to get there is to validate it so if it's a question Gary it was or not the recording argument could have been made earlier I don't think it could have been because there's no you know we haven't we just haven't had we know we had the kai sore come out but I at the district court level the district court is not going to accept that I think this court can but not at the district court well okay thank you thank you counsel I want to thank both counsel for the briefing and argument in this case is submitted thank you
judges: Bress, Bumatay, Rayes